**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Jack H.[1],

      **Plaintiff,**

v.

                     20-CV-266-HKS

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## DECISION AND ORDER

    Plaintiff, Jack H., brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his applications for social security income ("SSI") and a period of disability and disability insurance benefits ("DIB") under Titles XVI and II of the Act.  Dkt. No. 1.  This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No. 14.

    Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Dkt. Nos. 9, 12.  For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 9) is GRANTED, and Defendant's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED.

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Decision and Order will identify plaintiff by first name and last initial.

1

**BACKGROUND**

On February 24, 2016, Plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") alleging disability beginning on January 31, 2014, due to: "Eyes are bad Half blind in one and the other is weak;" "My hearing is real bad I have hard time hearing things;" "knees are bad had surgery and they are bad;" "POOR CIRCULATION IN MY LEFT KNEE;" and breathing problems. Tr.[2] 184-190, 216.  On August 8, 2016, Plaintiff's claims were denied by the SSA and he requested review.  Tr. 88-97.  On December 4, 2018, Plaintiff appeared with his attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Paul Georger ("the ALJ").  Tr. 30-76.  On February 21, 2019, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 9-29. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on January 10, 2020. Tr. 1-4.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

**LEGAL STANDARD**

I.   **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by

---

[2] References to "Tr." are to the administrative record in this matter.  Dkt. No. 8.

substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I.    **The ALJ's Decision**

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  As an initial matter, the ALJ concluded Plaintiff met the insured status requirements of the Act through December 31, 2020.  Tr. 15.  At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 24, 2016 the alleged onset date.  *Id.*  At step two, the ALJ found Plaintiff has the following severe impairments:  Peripheral polyneuropathy; degenerative disc disease of the cervical and lumbar spine, with cervical and lumbar radiculopathy and herniated discs in the cervical spine; optic neuropathy and atrophy resulting in blindness in the right eye; degenerative joint disease of the right knee; COPD; and major depressive disorder.  *Id.*  The ALJ also concluded that Plaintiff's obstructive sleep apnea, hypertension, and diabetes were non-severe impairments.  *Id.*  At step three, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. 15-17.

Next, the ALJ determined Plaintiff retained the RFC to perform a limited range of light work.[3] Tr. 17-22.  Specifically, Plaintiff can only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, ropes, and scaffolds.  Tr. 17-.  Plaintiff can tolerate occasional exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants.  Tr. 18.  Plaintiff can perform simple, routine, and repetitive

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R § 404.1567(b).

tasks and make simple work decisions.  *Id.*  Plaintiff could occasionally interact with supervisors, coworkers, and the public.  *Id.*  Plaintiff should have no exposure to unprotected heights or moving mechanical parts; and would occasionally be exposed to ordinary visual hazards.  *Id.*

At step four, the ALJ concluded Plaintiff is unable to perform his past relevant work as: a supervising janitor; milling machine operator; document shredder; conveyor feeder; courier; and electric assembler.  Tr. 22.  At step five, the ALJ considered Plaintiff's age (47 on alleged disability date), education, work experience, RFC, and relied on the VE's testimony in concluding that there are jobs existing in significant numbers in the national economy that Plaintiff can perform.  Tr. 23-24.  The ALJ identified the following jobs that Plaintiff could perform:  small products assembler; cleaner, housekeeper; and electrical sub-assembler.  Tr. 23-24.  Accordingly, the ALJ determined that Plaintiff was not disabled under the Act from February 24, 2016 through February 26, 2019.  Tr. 24.

II.     Analysis

Plaintiff argues that remand is warranted because the physical RFC is not supported by substantial evidence for the following reasons: (1) the ALJ erred in discounting the opinions of Plaintiff's treating providers, neurosurgeon Gregory Bennett M.D., ("Dr. Bennett") and physiatrist Amrit Singh, M.D., ("Dr. Singh"), in determining Plaintiff's physical RFC; and (2) failed to address a limitation prohibiting Plaintiff's exposure to loud noise, despite according substantial weight to the medical opinion that

6

assessed the limitation.  Dkt. No. 9 at 12.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.  Dkt. No. 12 at 9, 17.  This Court does not reach Plaintiff's second argument because it agrees that remand is necessary where the ALJ erred in discounting the opinion of Plaintiff's treating providers.

Plaintiff argues that the ALJ violated the treating physician rule in evaluating the opinions of Dr. Bennett and Dr. Singh, by failing to properly apply the *Burgess* factors in discounting the medical opinions.  Dkt. No. 9 at 13-17.  This Court agrees.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F.App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (internal citation and quotation marks omitted).  As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.

### A. Medical Opinion Evidence from Dr. Bennett

On July 9, 2018, Dr. Bennett authored a note stating the following: "[Plaitniff] remains totally disabled.  He last worked 1/2016.  He has numerous medical conditions including diabetes, neuropathy, sleep apnea."  Tr. 703.

### B. Medical Opinion from Dr. Singh

On June 4, 2018, physiatrist Dr. Singh, opined the following:  "He has multiple medical issues resulting in significant functional deficits.  I do not think he is employable in any capacity.  He continues to await a hearing for Social Security disability.  He will be seen back in follow-up in 8-12 weeks."  Tr. 777.

### C. The ALJ failed to apply the *Burgess* Factors

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial case evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2), 416.927(c)(2).[4]  In assessing less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted).  The "*Burgess* factors" include:

> "(1) the frequen[cy], length, nature, and extent of treatment;
> (2) the amount of medical evidence supporting the opinion;
> (3) the consistency of the opinion with the remaining medical evidence; and

---

[4] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  However, because Plaintiff's applications for SSI and DIB were filed before the new regulations and SSRs went into effect, this Court reviews the ALJ's decision pursuant to the earlier regulations and SSRs.

>   (4) whether the physician is a specialist."

*Estrella*, 925 F.3d at 95-96 (citation omitted); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Unless a searching review of the record demonstrates that the ALJ provided "good reasons" for the amount of weight accorded to a treating physician's opinion; a reviewing court should remand where an ALJ fails to explicitly consider the *Burgess* factors in assessing less than "controlling weight" to a treating physician's opinion.  *Id.* at 96.

>   First, while the ALJ identified Dr. Bennett and Dr. Singh as Plaintiff's "treating physicians" the ALJ's decision is silent on the first *Burgess* factor, "the frequency, length, nature, and extent of treatment."  Tr. 21.  "Merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'"  *Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020).

>   Regarding the third *Burgess* factor, the ALJ addressed only Dr. Bennett's opinion, noting that the doctor cited Plaintiff's predominantly non-severe impairments and then the ALJ referenced record medical evidence reflecting Plaintiff's non-compliance with treatment for his sleep apnea and diabetes.  Tr. 21 (citing Exhibits: 16F/3, 10F/19, 12F/103-104, 20F/23, 21F/2, 22F/2, 10F/12, 49, 111).

>   The ALJ did not address the second or the fourth *Burgess* factors and summarily stated that he discounted the opinions of the treating physicians because

their statements were conclusory and pertained to the ultimate issue of disability, which is an issue reserved to the Commissioner. Tr. 21.

A medical opinion is a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [ ] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Some opinions are not considered medical opinions, where, for example, they effectively decide the ultimate issue, they opine on a matter reserved to the Commissioner. 20 C.F.R. § 404.1527(d). So an "opinion" by a medical source that a claimant is "'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant] is disabled." 20 C.F.R. § 404.1527(d)(1).

However, the ALJ must still provide good reasons for refusing to credit a treating physician's opinion on an issue reserved to the Commissioner. *Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (summary order) (finding the district court erred in holding that the plaintiff was not entitled to an explanation of the reasons why the ALJ refused to credit the opinion of a treating provider, where the treating provider had opined on issues reserved to the Commissioner). The Second Circuit has explained:

> Reserving the ultimate issue of disability to the Commissioner relieves the [SSA] of having to credit a doctor's finding of disability, but it does not exempt [ALJs] from their obligation … to explain why a treating physician's opinions are not being credited. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even— and perhaps especially—when those dispositions are unfavorable.

10

*Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

In this case, the ALJ's only stated reason for rejecting the opinions of Dr. Bennett and Dr. Singh was that the ultimate issue of disability is reserved to the Commissioner. Tr. 21. This reasoning alone does not relieve the ALJ of his duty to evaluate the treating physician's opinion and explain why the opinion was not credited. *See Halpin v. Colvin*, 2018 WL 4922920, at *4 (W.D.N.Y. Oct. 10, 2018).

Although there were other medical opinions in the record that the ALJ addressed, they do not support the ALJ's physical RFC assessment in consideration of the following impairments which the ALJ found severe: Peripheral polyneuropathy; degenerative disc disease of the cervical and lumbar spine, with cervical and lumbar radiculopathy and herniated discs in the cervical spine.

Dr. Prawak performed a consultative ophthalmology evaluation of Plaintiff on July 6, 2016. Tr. 303-305. The doctor diagnosed dry eye syndrome, right optic atrophy, bilateral incipient cataracts, right lower nasal quadrant visual field defect, and blind right eye. Tr. 303. Dr. Prawak opined Plaintiff could drive a motor vehicle and read, but could not operate potentially dangerous machinery or climb heights. Tr. 305. The ALJ accorded Dr. Prawak's opinion "substantial weight," concluding the doctor's findings, diagnoses and limitations were consistent with the record, which demonstrated

Plaintiff, though visually limited, is still able to drive and has 20/20 vision with glasses. Tr. 21.

Dr. Miller performed a physical consultative examination of Plaintiff on July 8, 2016.  Tr. 312-315.  The doctor noted Plaintiff's chief complaints consisted of right knee pain and COPD.  Tr. 312.  Plaintiff indicated he had right knee pain since he shattered his patella twenty years ago and underwent surgery on his knee.  Id.  Plaintiff also reported a history of COPD, with increased shortness of breath and cough in response to dust, smoking, and weight gain.  *Id.*  Dr. Miller noted Plaintiff smokes a pack of cigarettes a day and drinks alcohol every day.  *Id.*  The doctor observed Plaintiff's normal gait, full squat, normal stance, no reliance on assistive devices to ambulate, ability to walk on heels and toes without difficulty, and full range of motion of Plaintiff's cervical and lumbar spine and extremities.  Tr. 313, 314.  Dr. Miller diagnosed Plaintiff with bilateral knee pain, remote history of right patella surgery, and COPD.  Tr. 314.  The doctor opined Plaintiff should avoid dust, irritants, and tobacco exposure; and would have limitations for prolonged kneeling and squatting.  Tr. 315.

The ALJ accorded Dr. Miller's opinion "partial weight," observing the limitations that the doctor assessed pertaining to Plaintiff's knee and respiratory issues were consistent with the objective evidence of record.  Tr. 21.  The ALJ also found that with respect to Plaintiff's spinal issues, the doctor's diagnoses were consistent with her benign findings on musculoskeletal examination of Plaintiff.  *Id.*  But, here the ALJ found Plaintiff does experience limitations due to his spinal issues and therefore only accorded

partial weight to Dr. Miller's opinion.  *Id.*  However, the ALJ did not cite to any medical evidence in support of his conclusion, nor did the ALJ identify exactly what limitations Plaintiff experiences due to his spinal issues.  Furthermore, the ALJ discredited the opinions of Dr. Singh and Dr. Bennett who were the only providers who diagnosed and treated Plaintiff for his spinal impairments.

In the absence of medical opinion evidence concerning Plaintiff's spinal issues, the ALJ incorporated an analysis of Plaintiff's medical treatment records from examinations entirely unrelated to spinal issues (G.E.R.D., hospitalization for dehydration, emergency room visit, and slip and fall shoulder injury) and concluded that the record demonstrated "a pattern of inconsistent symptomatology when [Plaintiff] is examined for non-spinal conditions." Tr. 19.  For example, the ALJ noted Plaintiff was found to have normal gait and station and was able to transfer from sitting to standing independently upon follow-up examination for G.E.R.D. in January of 2017.  *Id.*  The ALJ also observed that while being treated for dehydration in March of 2017, Plaintiff exhibited normal range of motion of his extremities with normal gait and normal breath sounds.  *Id.*  First, these isolated observations of Plaintiff's gait and stance do not reflect Plaintiff's ability to perform the physical requirements of light work eight hours per day, five days per week.  Second, the ALJ is not a medical professional and is not qualified to assess a claimant's RFC on the basis of bare medical findings.  Third, the ALJ again failed to discuss the medical opinions and evidence of the providers who diagnosed and treated Plaintiff for his spinal impairments.

The ALJ also cited objective medical evidence from the record including Plaintiff's EMG study from 2016 that revealed Plaintiff's peripheral neuropathy and Plaintiff's MRI from 2017 that revealed epidural lipomatosis at the L5-S1 level resulting in severe narrowing of the thecal sac, mild narrowing of the thecal sac at L4-L5, and minimal retrolisthesis of L4 and L5 and minimal grade I anterolisthesis.  Tr. 19 (citing Exhibit 10F/148).  Again, without a medical opinion translating these objective medical imaging records into physical functional capabilities, the ALJ is precluded from interpreting objective medical imaging in support of an RFC determination as an ALJ is not a medical professional.

The physical RFC is unsupported by substantial evidence where the ALJ failed to properly evaluate the opinions of Dr. Bennett and Dr. Singh as required by the treating physician rule and ultimately relied on his own lay opinion in assessing Plaintiff's physical RFC. Although it is well established that treating source opinions on issues that are reserved to the Commissioner are not entitled to deference, an ALJ must still explain why a treating opinion is not credited.  *See Snell*, 177 F.3d 128, at 134 (2d Cir. 1999); *see also Littlejohn v. Comm'r of Soc. Sec.*, 2019 WL 1083693, at *5 (W.D.N.Y. Mar. 7, 2019) ("even if the treating source statements were legal conclusions and not medical opinions, the ALJ nonetheless erred by discounting them without first asking for further interpretation or information from the treating sources") (citations omitted).

This Court finds that remand is warranted for the ALJ to recontact Dr. Singh and Dr. Bennett or another medical provider to obtain a medical assessment of Plaintiff's physical functional capability in consideration of the following impairments which the ALJ found severe:  Peripheral polyneuropathy; degenerative disc disease of the cervical and lumbar spine, with cervical and lumbar radiculopathy and herniated discs in the cervical spine.

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 9) is GRANTED.  The Commissioner's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:     Buffalo, New York
           September 30, 2021

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**